IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

**Alexandria Division**

| | |
|---|---|
| SAMIA BELLOUNIS, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 1:18-cv-00885 |
| MIDDLE-EAST BROADCASTING NETWORK, INC., | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

THIS MATTER comes before the Court on Defendant Middle-East Broadcasting Network, Inc.'s ("Defendant" or "MBN") Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56.

Plaintiff is a female born in 1966, who worked for Defendant, a private, tax-exempt, non-profit corporation in Northern Virginia, between 2009 and 2016. Plaintiff alleges she was subject to discrimination on the basis of her religion, sex, age and disability in violation of Title VII, the Age Discrimination in Employment Act ("ADEA"), and the Americans with Disabilities Act ("ADA").

Plaintiff was hired by Defendant as a studio technician in December, 2009. At the beginning of her employment, Plaintiff was given MBN's Employee Handbook which required employees to

maintain a respectful work environment. Later, Plaintiff was moved to a studio camera and robotics operator position, where she worked under the supervision of Michael Kauffman, Gail Gleeson and three other individuals.

In this new position, Plaintiff was responsible for setting up and operating the video and robotic camera equipment for various productions under the vision and command of the director. Due to MBN's restructuring, a male employee, Serzei Kelch, was moved to the studio camera and robotics team in March, 2016. At the time of Plaintiff's employment termination, in August, 2016, the team of studio camera and robotics operators consisted of five other men and Plaintiff. The average age of the other operators was 48 years.

From the beginning in her new position, Plaintiff had difficulty meeting performance expectations. Her initial 30-day review, the first evaluation of her employment, stated that her performance needed improvement; besides technical performance issues, her communication with directors was specifically noted to be problematic. In the review meeting, her supervisors admonished Plaintiff for being argumentative with them. Plaintiff resisted the feedback.

In June, 2015, while on the job, Plaintiff referred to a colleague as an "a**hole." That employee filed a complaint. In the following meeting, Plaintiff rejected her supervisors'

2

reprimand, claiming the statement was a joke. She was given verbal warning about her behavior in the workplace.

In that same month, Plaintiff brought two medical notes to her supervisor. The first note requested that she not work more than eight hours a day and that all her work be scheduled during daylight hours because she had had difficulty with fatigue for the past two months. At that time, all employees with the same position as Plaintiff worked four days per week for ten hours each day on shifts beginning in the dark and ending in daylight, or vice versa. Ultimately, Defendant found an accommodation that did not require Plaintiff to work more than eight hours a day and created a non-traditional shift, during which she would work only during daylight hours. In her complaint, Plaintiff states her request for accommodation was resolved months before her termination.

On October 4, immediately before a broadcast, Plaintiff bypassed her director and spoke directly with the anchor of the tv show through the intercom system. The director reminded Plaintiff that only directors should communicate with the anchor. Rather than follow this directive, Plaintiff complained to Mr. Kauffman. Plaintiff rejected the correction, claiming she was only joking with the anchor over the intercom, and that the director had been unprofessional when she screamed at her for violating protocol. MBN investigated the alleged incident and

found no evidence of unprofessional conduct by the director. A meeting was scheduled four days later, with Mr. Kauffman and Plaintiff, as well as the operations manager and Plaintiff's current supervisor. They replayed the recording of the communications at issue, and Plaintiff admitted the recording differed substantially from her memory of the incident. The meeting ended with Plaintiff being reminded of her responsibility to talk with the director and not directly with the show's anchor.

Only five days after this incident, Plaintiff again bypassed a director and spoke with another anchor over the intercom. Per Plaintiff's request, she was sent a document showing the protocol for communicating in the control room. This document, MBN best industry practice document distributed to employees in 2010, stated that all crew members answer to the director in the course of production, as a universally accepted principle in the industry. Mr. Kauffman wrote up Plaintiff, warning her that her conduct was unacceptable and that further repetition could result in disciplinary action, up to and including termination. Plaintiff saw and signed this write-up on Oct 27, 2015. In a second, follow-up meeting, Plaintiff's supervisors underscored the importance of her adherence to the protocol and informed her that if she did not follow her

4

supervisor's instructions, her employment would be terminated for insubordination. Plaintiff stated that she understood.

On December 21, 2015, Plaintiff played a video game on a personal device and listened to music loud enough to be heard outside the video room. Following this incident, Plaintiff received another disciplinary write-up.

The following year, on February 2, a mistake lead to two seconds of dead air on the tv station, resulting in a black screen for viewers. Dead air is a serious offense at MBN. After an investigation by Defendant's engineers, Defendant's discovered that the incident could have been caused only by human error.

Plaintiff was then placed on a Performance Improvement Plan ("PIP"). The PIP designated three specific performance deficiencies: on air mistake resulted in dead air during broadcast; insubordination in refusing and questioning her supervisors directives regarding communications workflows during production; and a lack of full engagement (by watching video and playing games) during the preproduction period.

On August 6, 2016, Plaintiff jokingly told another employee she would kill him. The comment was reported to Plaintiff's supervisors. In the follow-up meeting, Plaintiff was informed that such jokes were unacceptable in the workplace. The write-up Plaintiff received recommended discipline shy of termination.

5

However, the head of the department read the report and recommended Plaintiff's employment be terminated and that the recruitment process for a replacement begin immediately. This instruction was given to the Vice President for Administration, who in turn promptly met with general counsel for MBN. The final decision was approved by the President of MBN, and Plaintiff's employment was terminated on August 17, 2016. Her position was eventually filled by a woman, Mary Manby.

On February 16, 2017, Plaintiff filed an Equal Employment Opportunity Commission ("EEOC") complaint, in which she claimed to have suffered religious, sex, age and disability discrimination and retaliation. Plaintiff received a Notice of Right to Sue from the EEOC on April 19, 2018. Plaintiff filed this action on July 17, 2018 and amended her complaint on November 17, 2018. In her Second Amended Complaint, Plaintiff alleged Religious and Sex Discrimination under Title VII (Count I and II), Age Discrimination under the ADEA (Count III), Disability Discrimination under ADA (Count IV), and Unlawful Discharge in violation of established public policy (Counts V and VI). Counts I through V were against Defendant Middle-East Broadcasting Networks, Inc, and Count VI was against Plaintiff's supervisor, Gail Gleeson. In January, 2019, the Court granted Defendant's Motion to Dismiss on Counts V and VI, leaving only

6

Counts against Middle-East Broadcasting Networks, Inc. Discovery is completed and their case is ripe for summary judgment.

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). When reviewing a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party. See Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 644-45 (4th Cir. 2002). Summary judgment may be entered when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The "mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient" to find an issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

A plaintiff wishing to initiate a discrimination lawsuit first must exhaust her administrative remedies by filing a charge with the EEOC and receiving a Notice of Right to Sue. See Balas v. Huntington Ingalls Indus., Inc., 711 F.3d 401, 407 (4th Cir. 2013); see also Abdus-Shahid v. Mayor & Balt., 674 Fed. App. 267, 274 (4th Cir. 2017). Merely checking a box on the

EEOC form, without further mention of or factual basis for the allegation, is "insufficient to exhaust [a category of discrimination] as a claim." Earl v. Norfolk State Univ., No. 2:13cv148, 2014 U.S. Dist. LEXIS 88652, at *36 (E.D. Va. June 26, 2014). A plaintiff that fails to raise a claim in the EEOC charge is precluded from later asserting that claim in court, without first filing an amended charge with the EEOC. See Bryant v. Bell Atl. Maryland, Inc., 288 F.3d 124, 132 (4th Cir. 2002); see also Balas, 711 F.3d at 408.

Here, Plaintiff failed to fully exhaust her religious discrimination claim with the EEOC. She checked the box for religious discrimination but made no further mention of the claim on the filed EEOC form. Thus, this Court lacks jurisdiction to address the religious discrimination claim in Count I.

A plaintiff alleging sex, age, or disability discrimination may prove her case by using either (1) direct or circumstantial evidence of discrimination, or (2) the burden-shifting approach under the *McDonnell Douglas* "pretext" framework. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973); see also Gordon v. Napolitano, 863 F.Supp. 2d 541, 546 (E.D. Va. 2012)(citing Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 284 (4th Cir. 2004)). Direct evidence of discrimination consists of "conduct or statements that both

8

reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision." Warch v. Ohio Cas. Ins. Co., 435 F.3d 510, 520 (4th Cir. 2006). Such evidence may include announcements or admissions by the employer, or unmistakable indications that a protected characteristic was a determining factor in the particular employment action. See Ramos v. Molina Healthcare, Inc., 963 F.Supp 2d 511, 522 (E.D. Va. 2013), aff'd, 603 F. App'x 173 (4th Cir. 2015).

Plaintiff claims that on various occasions, employees made comments discriminating against Arab employees. These allegations are unsupported; Plaintiff could not remember any specific instance of discrimination, and only one comment has been identified. Defendant concedes an offensive post was made on Facebook, by an employee, but argues that the comment was not work related, not made by a supervisor or manager, and was not directed at Plaintiff, who does not have a Facebook account. While derogatory or insulting comments may be direct evidence of discrimination, the remarks must relate to the employment decision in question. McNeal v. Montgomery County, 307 Fed. Appx. 766, 774(4th Cir. 2009). Plaintiff has not connected the Facebook post with her employment termination. Due to lack of direct evidence establishing discrimination, the parties proceed under the *McDonnell Douglas* framework on all Counts.

9

Under *McDonnell Douglas*, a plaintiff must first state a prima facie case of discrimination. See McDonnell Douglas, 411 U.S. at 802. If she succeeds, the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for its adverse employment decision. See Mereish v. Walker, 359 F.3d 330, 334 (4th Cir. 2004). If the defendant satisfies this showing, the plaintiff must show that the articulated reason is a pretext for discrimination. Id. at 430-31.

Plaintiff fails to establish that Defendant discriminated against her on the basis of age, sex or disability. A prima facie case of discrimination under Title VII requires a plaintiff to prove (1) membership in a protected class; (2) an adverse employment action was taken against her; (3) her job performance met her employer's legitimate expectations at the time of the adverse action; and (4) her position remained open or was filled by a similarly qualified applicant outside the protected class. See Garrow v. Economos Props., Inc., 242 F. App'x 68, 70 (4th Cir. 2007); Reynolds v. Am. Nat'l Red Cross, 701 F.3d 143, 150 (4th Cir. 2012); see also Duffy v. Belk, Inc., 477 F.App'x 91, 94 (4th Cir. 2012).

Plaintiff's discrimination claims fail to establish the third element because she was not meeting the legitimate expectations of her employer. Plaintiff was twice written up for

failure to follow her employer's rules, she received warnings on four occasions for insubordination and inappropriate comments, including one warning after telling her coworker she would kill him. After twice failing to follow protocol on set and playing loud music prior to air time, Plaintiff was placed on a PIP and given opportunity to meet her employer's performance expectations. Plaintiff's unprofessional behavior, poor performance, and her employer's raised concerns each constitute failure to meet the legitimate expectations of her employer. See Buchhagen v. ICF Int'l, Inc., 650 F. App'x 824, 829 (4th Cir. 2016); Shun-Lung Chao v. Int'l Bus. Machines Corp., 424 F.App'x 259, 261 (4th Cir. 2011); see also Sadeghi v. Inova Health Sys., 251 F.Supp., 3d 978, 992-93 (E.D. Va. 2017), aff'd, 711 F.App'x 174 (4th Cir. 2018). Plaintiff argues that she did not have a history of poor performance but provides as support only her own deposition testimony and statements made by an individual who was not her supervisor. Plaintiff's self-serving testimony and statement from a non-supervisory individual are irrelevant because the opinion of the employee's supervisors controls whether the employee was satisfactorily meeting expectations. See Hakwins v. PepsiCo, Inc., 203 F.3d 274, 280 (4th Cir. 2000); see also Ramos v. Molina Healthcare, Inc., 963 F.Supp. 2d 511, 523 (E.D. Va. 2013). A plaintiff's own testimony cannot demonstrate a genuine issue as to whether she was meeting

11

expectations. See <u>Bart-Williams v. Exxon Mobile Corp.</u>, 2017 U.S. Dist. LEXIS 161479, at *29 (E.D. Va. Sept. 28, 2017) (citing <u>King v. Rumsfeld</u>, 328 F.3d 145, 149 (4th Cir. 2003). Plaintiff fails to substantiate her own opinion with evidence of record and thus fails to establish an element essential to all of her employment discrimination claims.

Plaintiff has also failed to establish other elements essential to her claims. In Count II, Plaintiff alleges sex discrimination. To establish a prima facie case of sex discrimination, Plaintiff must show that: (1) she is a member of a protected class; (2) she suffered an adverse employment action (such as discharge); (3) she was performing her job duties at a level that met the employer's legitimate expectations at the time of the adverse employment action; and (4) her position remained open or was filled by a similarly qualified applicant outside the protected class. See <u>Garrow</u>, 242 F. App'x at 70 (citing <u>Hill</u>, 354 F.3d at 285).

Here, in addition to element three, Plaintiff has not established element four. Plaintiff claimed she was replaced by her male colleague, Serzei Kelch. However, Mr. Kelch joined Plaintiff's team prior to her termination. Plaintiff was eventually replaced by a woman, Mary Manby. Plaintiff argues an inference of discrimination should be made because Plaintiff was the only woman working on her team at the time of her employment

termination. However, the Court cannot accept this argument because it "would effectively immunize poor performers from termination so long as they fell in a protected class and were the only representative of that protected class in their department." Hawkins v. PepsiCo, Inc., 203 F.3d 274, 280 (4th Cir. 2000)(quoting Gairola v. Va. Dep't of Gen. Servs., 753 F.2d 1281, 1287 (4th Cir. 1985)). The law does not support such an inference. Plaintiff's claim that she was the only woman working on her team is insufficient to establish element four of a her sex discrimination claim.

In Count III, Plaintiff alleges age discrimination under the ADEA, which requires a showing that her age was the "but for" cause of the employment action. See Gross v. FBL Fin. Servs. Ins., 557 U.S. 167, 176 (2009). She must also establish:(1) she was older than 40; (2) she was discharged; (3) she was qualified for the job and met the defendant's legitimate expectations; and (4) her position remained open or was filled by a similarly qualified individual who was substantially younger. See Warch v. Ohio Cas. Ins. Co., 435 F.3d 510, 513 (4th Cir. 2006).

Plaintiff fails to show that she was meeting her employer's legitimate expectations, as previously discussed, but she also fails to establish element four because Plaintiff was replaced by an employee two years older than herself. To wit, Plaintiff

13

testified that she did not believe a younger employee replaced her.

In Count IV, Plaintiff claims disability discrimination under the ADA. To establish a case of disability discrimination, a plaintiff must show: (1) she was a qualified individual with a disability; (2) she suffered an adverse employment action; (3) she was fulfilling her employer's legitimate expectations at the time of the adverse employment action; and (4) the circumstances raise a reasonable inference of unlawful discrimination. See Reynolds, 701 F.3d at 150. Similar to the ADEA, an ADA discrimination claim requires a requires proof of "but for" causation. See Gentry v. E.W. Partners Club Mgmt. Co., 816 F.3d 228, 234 (4th Cir. 2016).

Plaintiff fails to meet elements one because she has not established that she suffered a disability at the time her employment was terminated. The ADA defines disability as a "physical or mental impairment that substantially limits one or more of the major life activities of an individual." 42 U.S.C. § 12102(1). The existence of a cognizable disability is assessed "at the time of the adverse employment action." Anderson v. Discovery Communs., 517 Fed. Appx. 190, 195-196 (4th Cir. 2013) (citing EEOC v. Chevron Phillips Chem. Co., 570 F.3d 606, 618 (5th Cir. 2009)). Plaintiff has not established that she suffered from sleep apnea at the time of termination. Plaintiff

14

provided her employer with two doctor notes that referenced her difficulty sleeping, but both notes predated her termination by at least one year, and one anticipated that her sleeping trouble would last only six months. Neither establish Plaintiff suffered from any disability at the time employment ended. For this reason, Plaintiff's claim in Count IV fails.

In a final attempt to establish her prima facie case by inference, Plaintiff identifies allegedly disparate treatment of another employee, Robert Sherman, as a possible comparator. Plaintiff claims Mr. Sherman chased her through the office building and did not receive severe reprimand for this behavior. Plaintiff surmises that the alleged leniency was because Mr. Sherman was a non-Muslim male.

An inference of discrimination is raised when a plaintiff shows that another employee from a non-protected class was treated substantially different and more favorably. See Haywood v. Locke, 387 F.App'x 355, 359 (4th Cir. 2010). When the discrimination case relies completely upon the comparison, the validity of the prima facie case depends upon whether the comparator is "similar in all relevant respects," including sharing the same supervisor as the plaintiff. Id. Here, Mr. Sherman reported to a different supervisor than Plaintiff. Plaintiff also fails to support the allegation that Mr. Sherman chased her through the building or had any serious misconduct.

15

Plaintiff has not presented facts sufficient to establish a comparator or to make out a prima facie case of discrimination.

Alternatively, even if Plaintiff were able to establish a prima facie case of discrimination, Defendant's legitimate, nondiscriminatory reasons for Plaintiff's termination satisfy the burden of production in the *McDonnell Douglas* framework. This shifts the burden back to Plaintiff to prove that Defendant's proffered reason was mere pretext for discrimination. Defendant has articulated legitimate reasons for Plaintiff's termination: Plaintiff's poor performance and repeated engagement in inappropriate, unprofessional conduct. An employee's substandard performance and unprofessional behavior are a legitimate, non-discriminatory reason for discipline and termination. Hawkins v. PepsiCo, Inc., 203 F.3d 274, 279 (4th Cir. 2000); see Natal v. Arlington Cty. Pub. Sch., No. 1:18-cv-1178 (AJT/MSN), 2019 U.S. Dist. LEXIS 98894, at *3-4, 16 (E.D. Va. June 12, 2019). Defendant has presented evidence that Plaintiff engaged in multiple acts of unprofessional behavior. She swore on the job and threatened coworkers, in violation of written policy guidelines requiring employees maintain a respectful workplace. Following each incident, she was reminded of the policy and disciplined for such behavior. Beginning with her first review and extending throughout the course of her employment, Plaintiff's job performance was evaluated as

"needing improvement." She was repeatedly unable to follow communication protocol on set. After her mistake which led to seconds of dead air on the tv station, Plaintiff was placed on a PIP, but failed to improve her performance.

In the various review and correctional meetings, Plaintiff was defiant of authority. After investigating the incident of Plaintiff threatening a coworker, Defendant reasonably relied upon the results of that inquiry to discipline and terminate Plaintiff for her unprofessional behavior. Defendant's actions were not pretextual, even if Plaintiff disagreed with the results of Defendant's investigation and with her termination. Thus, Plaintiff's religious, sex, age, and disability discrimination claims fail.

For the forgoing reasons, this Court finds that Defendant is entitled to summary judgment. An appropriate order shall issue.

/s/ Claude M. Hilton
CLAUDE M. HILTON
UNITED STATES DISTRICT JUDGE

Alexandria, Virginia
October 31, 2019